**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>In re: Colgate-Palmolive</u>
<u>Softsoap Antibacterial Hand</u>          Case No. 12-md-2320-PB
<u>Soap Marketing and Sales</u>            All Cases
<u>Practices Litigation</u>               Opinion No. 2015 DNH 211

<u>MEMORANDUM AND ORDER</u>

Consumers of Softsoap Antibacterial hand soap filed this
class action lawsuit against Colgate-Palmolive Company
("Colgate"), the manufacturer of Softsoap Antibacterial.
Plaintiffs claim that Colgate wrongfully induced class members
to purchase Softsoap Antibacterial by making false or misleading
marketing claims. The parties have successfully negotiated a
proposed settlement, and now ask me to certify the proposed
class and approve the settlement.  Class counsel have also filed
an assented-to motion for an award of attorneys' fees and
reimbursement of expenses incurred in prosecuting and settling
this case.

### I.   <u>BACKGROUND</u>

During the relevant period, the active ingredient in
Softsoap Antibacterial was triclosan.  In 1994, the Food and
Drug Administration ("FDA") announced that it lacked sufficient
data to determine whether triclosan is safe and effective for

use in consumer products.  Although the FDA has not updated its
assessment since that time, it has continued to investigate
triclosan.[1]  In addition, studies over the last fifteen years
have also raised doubts about triclosan's safety and efficacy.

In light of those doubts, plaintiffs here allege that
Colgate's marketing, labeling and advertising strategy for
Softsoap Antibacterial was false or misleading.  In particular,
plaintiffs claim that statements that Softsoap Antibacterial was
"clinically proven to eliminate 99% of germs your family
encounters," "offers antibacterial protection," "kills 99% of
common germs," and "Goodbye germs-Hello world," misled consumers
by suggesting that the product provided better health benefits
than other soaps.  Doc. No. 91 at 3.

A.    **Procedural History**

Between February 4, 2011 and October 28, 2011, putative
class actions were filed against Colgate based on the above-

---

[1] Most recently, in 2013, the FDA reopened the administrative
record on over-the-counter antiseptic drug products, including
triclosan, and issued a proposed rule to amend its 1994
tentative final monograph.  See 78 Fed. Reg. 76444, 76450 (Dec.
17, 2013).  That monograph, however, remains "tentative" and
does not bar triclosan's use in consumer hand soaps.  Doc. No.
103 at 12-13.  Moreover, the FDA has apparently missed several
self-imposed deadlines for publishing its updated tentative
final monograph.  See id.

described facts in California, Florida, Illinois, and Nevada.[2]
In those cases, plaintiffs brought claims on behalf of
themselves and similarly situated consumers in their respective
states,[3] alleging violations of their respective states' consumer
protection laws, breach of warranty, and unjust enrichment.
Each plaintiff sought class certification pursuant to Fed. R.
Civ. P. 23(b)(2) or Rule 23(b)(3), and requested both injunctive
and monetary relief.

By order dated March 7, 2012, the Judicial Panel on
Multidistrict Litigation ("JPML") transferred these cases to
this court for coordinated or consolidated pretrial proceedings.
Doc. No. 1.  Thereafter, on June 26, 2012, plaintiffs filed
their first Consolidated Amended Class Action Complaint.  Doc.
No. 24.  Defendants moved to dismiss the Consolidated Amended
Class Action Complaint on August 10, 2012.  Doc. No. 26.  After
the parties briefed and argued that motion, I denied defendants'
motion on March 18, 2013.

In their Fourth Consolidated Amended Class Action
Complaint, the operative complaint here, individual consumers

---

[2] Putative class actions were also filed in New Jersey and South
Carolina. Those cases were voluntarily dismissed.
[3] The putative class action filed in Florida also proposed a
nationwide class of Softsoap Antibacterial consumers as to its
breach of express warranty and unjust enrichment claims.  See
Complaint at 15, 18-19, Elstein v. Colgate-Palmolive Co., 12-md-
02321-PB (D.N.H. Oct. 19, 2011).

from California, Florida, Illinois and Nevada sued Colgate on behalf of themselves and proposed statewide classes of similarly-situated consumers residing in each of those states. Doc. No. 91 at 1.  Plaintiffs again alleged violations of their respective states' consumer protection statutes and statutory and common law warranty and unjust enrichment laws.  Id.  And, again, plaintiffs sought class certification according to both Rule 23(b)(2) or Rule 23(b)(3), and pursued both injunctive and monetary relief.  Id. at 24, 38-39.

Pursuant to their proposed Settlement Agreement, the parties seek to certify a settlement class consisting of all persons who purchased the complained-of product in the United States from January 1, 1992, up to and including the Notice Date.  Doc. No. 92-2 at 12.  Under the terms of the Settlement Agreement, plaintiffs seek class certification pursuant only to Rule 23(b)(2), and pursue only injunctive relief.  See id. at 15-16; Doc. No. 100 at 19-23.

**B.   Discovery**

Over the course of this litigation, the parties have engaged in significant discovery.  Defendants have produced (and plaintiffs have reviewed) over 93,000 pages of documents. Defendants deposed the five class representatives.  Plaintiffs have deposed various Colgate employees, and consulted with

scientific, marketing, and economics experts.

C.    **Settlement Negotiations and Terms**

Since 2013, the parties have participated in settlement discussions.  In November 2013, retired U.S. District Judge for the District of Minnesota, James M. Rosenbaum, assisted the parties with an initial mediation.  That mediation was ultimately unsuccessful, but the parties resumed settlement negotiations in spring 2014.  As a result of their ongoing discussions, the parties have agreed to settle this case on the terms set out in the Settlement Agreement.

Pursuant to the Settlement Agreement, Colgate agrees not to use several allegedly misleading marketing statements for a period of five years or until applicable law changes, and agrees to use triclosan in Softsoap Antibacterial only in a manner consistent with final FDA regulation.[4]  Doc. No. 92-2 ¶30. Colgate further agrees to pay two million dollars ($2,000,000.00) to satisfy the costs of the Notice Plan, attorneys' fees, costs and expenses, and incentive awards

---

[4] The terms and requirements of the Agreement's injunctive relief expire on the earliest of: (1) five years from the effective date, or (2) the date upon which there are changes to applicable law that Colgate reasonably believes would require Colgate to modify the product's labeling or marketing in order to comply with applicable law.  Doc. No. 92-2 ¶30.

payable to the five named plaintiffs.[5] Id. ¶¶ 36-40.  In exchange, class members release their injunctive, declaratory, and non-monetary equitable claims related to the distribution, sale, purchase, labeling, packaging, marketing and/or advertising of Softsoap Antibacterial.  Doc. Nos. 92-2 ¶31; 94 at 1.  The Settlement Agreement does not, however, affect unnamed class members' monetary claims.  Doc. No. 102-1 at 8.  Thus, unnamed class members remain free to file individual or class action lawsuits against Colgate in the future seeking money damages for Colgate's allegedly misleading marketing of Softsoap Antibacterial.  Id.

**D.    Preliminary Approval and Notice to the Class**

On June 5, 2015, I granted the parties' joint motion for preliminary certification of the Settlement Class, preliminary approval of the proposed settlement, approval of the notice plan, notice administrator, and appointment of lead counsel.  Doc. No. 93. Thereafter, the parties supervised the provision of notice to potential class members.  That notice included: (1) a press release to approximately 6,000 press outlets across the United States, (2) publication of summary notice in the national

---

[5] Any amount from the $2 million remaining after the award of attorneys' fees, costs, expenses, incentive awards payable to Plaintiffs, and cost of the Notice Plan will be paid to the Children's Health Fund.

6

edition of *USA Today*, (3) an Internet banner ad campaign, (4) a Class Settlement website, and (5) notice to appropriate government officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").  Doc. No. 102-1 at 10-12.  Between June 19 and July 18, 2015, the banner ad campaign resulted in more than 71 million impressions published to Internet users.  Id. at 5.  Between June 17 and August 27, 2015 the Class Settlement website received 44,133 visits and 58,984 page views.  Id.

**E.   Reaction of the Class**

The court has received four objections to the proposed settlement.[6]  Doc. Nos. 95, 96, 99, 100.  These objections are discussed individually in the analysis section below.

**F.   Fairness Hearing**

The Fairness Hearing took place on September 28, 2015. Class counsel and counsel for Colgate were present. One objector, Anna St. John, was given the opportunity to be heard.

## II.   ANALYSIS

The parties' motions present three broad issues for my

---

[6] The parties have represented that one objector, Linda D'Agostino, intends to withdraw her objection.  Doc. Nos. 103 at 1 n.1; 105 at 2.  To my knowledge, however, Ms. D'Agostino has not formally withdrawn her objection.  I therefore discuss, and consider, her objection here.

consideration.  First, whether to certify the Settlement Class;
second, whether to grant final approval of the settlement on the
terms set out in the Settlement Agreement; and third, whether to
approve class counsel's motion for attorneys' fees and costs.
See Doc. Nos. 98; 102.  I address each issue in turn.

**A.   Class Certification**

In the June 5, 2015 preliminary approval order, I
conditionally certified a Settlement Class consisting of "all
persons who purchased the Product in the United States from
January 1, 1992, up to and including the Notice Date."  Doc. No.
93 at 2.  The parties have jointly moved for final
certification.  Doc. No. 102.  For the reasons provided below, I
conclude that plaintiffs have satisfied the applicable
constitutional and Fed. R. Civ. P. 23 requirements, and grant
the parties' motion.

1.   Standing and Mootness

I first address Objector St. John's threshold arguments
that class members lack standing to seek an injunction, and that
their request for injunctive relief has become moot.[7]

---

[7] In her written objection, St. John addressed these issues in
the context of her Rule 23(b)(2) argument.  See Doc. No. 100 at
9-10.  As I explained at the Fairness Hearing, however, I
understand her argument to be based on the Article III of the
Constitution, not the language of Rule 23.  See Doc. No. 105 at
7-9.  I therefore discuss this issue here.  See Warth v. Seldin,
422 U.S. 490, 498 (1975) (explaining that standing is a

With respect to standing, a litigant must establish standing as to each form of relief sought.  See Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009).  When seeking prospective relief, like the injunction proposed here, a plaintiff's standing "depend[s] on whether he [is] likely to suffer future injury" from the alleged misconduct.  City of L.A. v. Lyons, 461 U.S. 95, 105 (1983); see Donahue v. City of Bos., 371 F.3d 7, 14 (1st Cir. 2014).  Thus, previous exposure to the challenged action is itself insufficient to establish standing to seek injunctive relief.  O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974).  Instead, the plaintiff must demonstrate some ongoing injury or "real and immediate" threat of future injury from the defendant's alleged misconduct.  Lyons, 461 U.S. at 105.

In a class action lawsuit, at least one class representative must satisfy the standing requirements. See O'Shea, 414 U.S. at 494 ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").  To seek injunctive relief, therefore, at least one named plaintiff must show that he suffers an ongoing injury, or a real and immediate

---

"threshold question in every federal case").

threat of future injury, caused by the challenged conduct.

Here, St. John argues that plaintiffs lack standing to seek injunctive relief because plaintiffs have not alleged that they will purchase the offending product again.  See Doc. No. 100 at 15.  Plaintiffs respond that they remain hand soap consumers, and have not disclaimed any intent to purchase Softsoap Antibacterial in the future.  Doc. No. 103 at 10-12.  Thus, they contend, they will be "wronged again" if Colgate is permitted to market a triclosan-based Softsoap Antibacterial in misleading ways.  Id.  I agree with plaintiffs.

I find the District of D.C.'s treatment of this precise argument persuasive.  See Richardson v. L'Oreal U.S.A., Inc., 991 F. Supp. 2d 181, 190-95 (D.D.C. 2013).  First, as in Richardson, the record here "is devoid of evidence suggesting that plaintiffs are not likely to purchase the products again and thus not likely to suffer future harm."  Id. at 194-95 (citing Ries v. Arizona Beverages U.S.A., L.L.C., 287 F.R.D. 523, 533 (N.D. Cal. 2012).  Rather, plaintiffs have expressly stated that they remain hand soap consumers, and have not "disclaimed intent to purchase Softsoap ever again."  Doc. No. 103 at 8-10.  Second, like the Richardson court, I reject the suggestion that plaintiffs lack standing because, based on their involvement in this suit, they will not be fooled again by

Colgate's allegedly misleading practices.  As in Richardson,
"[t]o the extent the named plaintiffs purchased the products
strictly because of [Colgate's alleged] misrepresentations, the
risk of future harm may not be identical to that suffered in the
past. . . . But they will be harmed — without an injunction — by
not being able to rely on [Colgate's marketing and] label with
any confidence." Id. (citing Ries, 287 F.R.D. at 533).  I
therefore conclude that, although the named plaintiffs may know
about Colgate's alleged misrepresentations, they are likely to
suffer future harm absent the proposed injunctive relief.  I
thus determine that plaintiffs have standing to seek an
injunction.

St. John next essentially argues that plaintiffs' request
for injunctive relief has become moot.  Doc. No. 100 at 15.  The
mootness doctrine, like standing, is rooted in the
constitutional command "that the judicial power of Art. III
courts extends only to 'cases and controversies.'" Sonsa v.
Iowa, 419 U.S. 393, 402 (1975).  Article III's "case or
controversy" requirement must be satisfied throughout the course
of litigation. Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir.
2001).  "This means that, throughout the litigation, the
plaintiff must have suffered, or be threatened with, an actual
injury traceable to the defendant and likely to be redressed by

a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (citation and internal punctuation omitted).  Therefore, even if a plaintiff has standing to pursue a form of relief at the outset of a case, subsequent events may render his claim moot, thus requiring dismissal.  Cruz, 252 F.3d at 533.

Here, St. John contends that, even if the named plaintiffs once had standing to seek an injunction (which, she argues, they did not), circumstances have changed such that their request is now moot.  Doc. No. 100 at 15; see In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 14 (1st Cir. 2008).  She specifically argues that, because Colgate no longer sells Softsoap containing triclosan, and reports that it has no intention to do so, plaintiffs suffer no ongoing threat of injury that could be redressed by the proposed injunction.  See Spencer, 523 U.S. at 7.  I disagree.

There is an exception to the mootness bar in cases where the defendant voluntarily ceases the alleged misconduct after litigation begins.  See Knox v. Serv. Emps. Int'l Union, 132 S. Ct. 2277, 2287 (2012) ("voluntary cessation of challenged conduct does not ordinarily render a case moot").  This "voluntary cessation" exception exists to prevent a litigant from "altering its behavior long enough to secure a dismissal and then reinstating it immediately thereafter."  Am. Civil

Liberties Union of Mass. v. U.S. Conference of Catholic Bishops,
705 F.3d 44, 54-55 (1st Cir. 2013).  First Circuit precedent
suggests, however, that this exception does not apply when the
defendant stops the challenged conduct for reasons unrelated to
the litigation, or where there is no reasonable expectation that
the alleged misconduct will recur.  Id. at 55-56.

This case falls within the voluntary cessation exception
for several reasons. First, Colgate voluntarily stopped using
triclosan in Softsoap Antibacterial only after plaintiffs
initiated this lawsuit.[8]  Doc. No. 103 at 12.  Second, the FDA's
monograph governing triclosan's use in consumer products remains
"tentative," and therefore does not bar Colgate from
reintroducing triclosan into the product.  Thus, absent the
proposed injunction, there is nothing to stop Colgate from using
triclosan again.  Id. at 13.  And third, Colgate continues to
maintain that Softsoap Antibacterial containing triclosan
provided superior health benefits.  See Doc. No. 102-1 at 28.
These facts, taken together, show that, although Colgate has
disclaimed an intent to use triclosan in the product, the

---

[8] Although the record is unclear whether Colgate stopped using
triclosan in the product because of plaintiffs' suit, the
parties agree that Colgate made this change only after this
litigation began.  Doc. No. 103 at 12.

voluntary cessation exception applies here.[9]  Plaintiffs' request
for injunctive relief therefore is not moot.

For the above-stated reasons, I conclude that plaintiffs
have standing to pursue the proposed injunctive relief, that
their request for injunctive relief has not become moot, and
proceed to the Rule 23 analysis.

2.   Rule 23(a) Prerequisites

To obtain class certification, the plaintiff must satisfy
the prerequisites set out in Fed. R. Civ. P. 23(a)(1)-(4).  Fed.
R. Civ. P. 23(a); see In re Motor Vehicles Canadian Exp.
Antitrust Litig., 522 F.3d 6, 18 (1st Cir. 2008).  Plaintiffs
have the burden of showing that they meet each requirement.  See
Makuc v. Am. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987).
As explained below, plaintiffs have satisfied their burden here.

---

[9] As such, this case is distinguishable from In re New Motor
Vehicles, 522 F.3d 6 (1st Cir. 2008), upon which St. John
relies.  See Doc. No. 100 at 15-16.  That case, like this one,
involved a class action suit for injunctive relief.  In re New
Motor Vehicles, 522 F.3d at 7.  And, in that case, the First
Circuit determined that plaintiffs' claim for injunctive relief
had become moot due to changed circumstances after litigation
began.  Id. at 14.  The First Circuit based its decision,
however, on the fact that the "exceptional" circumstances or
"perfect storm" that gave rise to the challenged conduct no
longer existed after litigation began.  Id.  Yet, the injuries
in this case do not spring from any exceptional circumstances,
and, as described above, there is nothing (other than this
proposed injunction) to prevent this injury from recurring.

### a.   Numerosity

Rule 23(a)(1) limits class actions to those cases in which
"the class is so numerous that joinder of all members is
impracticable." Fed. R. Civ. P. 23(a)(1).  Although "numbers
alone are not usually determinative," the number of potential
class members and their geographic distribution are relevant to
whether plaintiffs have satisfied this "numerosity" requirement.
Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir.
1985).  Further, where it is difficult to identify potential
class members, it is more likely that a proposed class will
satisfy this requirement.  Id. at 132; see also In re Relafen
Antitrust Litig., 218 F.R.D. 337, 342 (D. Mass. 2003) ("forty
individuals [are] generally found to establish numerosity").

Here, during the relevant period, Colgate marketed Softsoap
Antibacterial to millions of consumers across the United States.
See Doc. No. 102-1 at 15.  Further, between June 17 and August
27, 2015 the Class Settlement website received 44,133 visits and
58,984 page views.  Id. at 11.  Given these facts, one can
reasonably infer that the class is so numerous that joinder
would be impracticable.  Fed. R. Civ. P. 23(a); see Kenneth R.
ex rel. Tri-County CAP, Inc. v. Hassan, 293 F.R.D. 254, 265
(D.N.H. 2013) (explaining that courts may draw a "reasonable
inference as to the size of the facts given the facts before

15

it") (citation and internal punctuation omitted).  I therefore
conclude that the plaintiffs have satisfied the numerosity
requirement.

        **b.  Commonality**

    Rule 23(a)(2) provides that there must be "questions of law
or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To
satisfy this requirement, the class's claims "must depend upon a
common contention . . . that is capable of classwide
resolution," meaning "that [the] determination of its truth or
falsity will resolve an issue that is central to the validity of
each one of the claims in one stroke."  Wal-Mart Stores, Inc. v.
Dukes, 131 S. Ct. 2541, 2551 (2011).  Thus, "[w]hat matters to
class certification . . . [is] the capacity of a classwide
proceeding to generate common answers apt to drive the
resolution of the litigation."  Id. (citations and internal
punctuation omitted).

    In this case, the class's claims depend upon the common
contention that, in light of doubts surrounding triclosan's
safety and efficacy, Colgate's marketing strategy for Softsoap
Antibacterial was false, deceptive, or misleading.  Plaintiffs'
claims turn, then, largely on questions that are the same for
all class members, including (1) whether triclosan is safe and
effective for use in consumer hand soap, and, in turn, (2)

whether Colgate's marketing tactics for Softsoap Antibacterial were false or misleading to an average consumer.  Despite potential nuances in different states' consumer protection laws, resolving these common questions would "generate common answers apt to drive the resolution of the litigation."  Id.; see, e.g., Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 757 (7th Cir. 2014) (explaining that commonality existed where "the question whether the . . . packaging was likely to deceive a reasonable consumer is common.  The claims of every class member will rise or fall on the resolution of that question.").  Accordingly, plaintiffs here have satisfied the commonality requirement.

### c.   Typicality

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This typicality requirement exists "to ensure that class representatives, in pursuing their own interests, concurrently will advance those of the class."  In re Hannaford Bros. Co. Consumer Data Breach Litig., 293 F.R.D. 21, 27 (D. Me. 2013).

Class representatives' claims are "typical" when they "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory."  Garcia-Rubiera v. Calderon,

570 F.3d 443, 460 (1st Cir. 2009) (citation and internal punctuation omitted). Representatives' claims are not typical, however, where they "may be subject to unique defenses that would divert attention from the common claims of the class," In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1535 (D. Mass. 1991), or "if factual differences predominate to the extent where the court must make highly fact-specific" determinations as to each class member. Collazo v. Calderon, 212 F.R.D. 437, 443 (D.P.R. 2002).

Here, the class representatives' and other class members' claims are based on the same legal theories, and arise from the same course of conduct – Colgate allegedly marketing Softsoap Antibacterial in a false and misleading way. As such, the typicality requirement is satisfied in this case.

### d. Representative Adequacy

Lastly, to satisfy Rule 23(a)(4)'s "adequacy requirement," plaintiffs must show that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two prongs. Plaintiffs must first show that "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews, 780 F.2d at 130. Second, plaintiffs must establish "that the interests

of the [class representatives] will not conflict with the interests of any class members." Id.

First, class counsel here is qualified and experienced in handling consumer class action lawsuits like this one. Doc. No. 102-1 at 18. Moreover, class counsel has devoted significant time to the factual research and discovery, motion practice, and mediation and negotiations that led to this settlement. See Doc. No. 98-2 at 7-8. Second, the class representatives' interests here are aligned with the interests of unnamed class members. The class representatives were active participants in the litigation and settlement process, from initial fact gathering, to responding to discovery requests and appearing for depositions, to examining the scope and nature of the relief. Id. at 11.

Finally, I reject St. John's contention that the proposed incentive awards defeat the class representatives' representative adequacy. See Doc. No. 100 at 27. A named plaintiff remains an essential ingredient of any class action suit, and incentive awards both help to induce an individual to participate, and compensate named plaintiffs for partaking in discovery, depositions, and other time-consuming aspects of the litigation. See, e.g., Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). Further, class counsel in this case has sworn

that the parties began negotiating incentive payments only after
resolving the proposed relief to the class as a whole.  Doc. No.
98-2 at 11.  There may be, as St. John contends, instances in
which an incentive award compels a named plaintiff to put his
own personal gains ahead of the interests of the class.  See In
re Dry Max Pampers Litig., 724 F.3d 713, 721-23 (6th Cir. 2013).
This, however, is not such a case.  I conclude that plaintiffs
have satisfied their burden as to Rule 23(a)(4).

### 3.   Rule 23(b) Analysis

In addition to meeting the Rule 23(a) prerequisites, the
plaintiff must further show that the proposed class falls within
"one of several elements of Rule 23(b)."  Smilow v. Southwestern
Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2008).  Here,
the plaintiffs seek certification pursuant to Rule 23(b)(2),
which requires that "the party opposing the class has acted or
refused to act on grounds that apply generally to the class, so
that final injunctive relief or corresponding declaratory relief
is appropriate respecting the class as a whole."  Fed. R. Civ.
P. 23(b)(2).

Certification under Rule 23(b)(2) is appropriate "when a
class seeks an indivisible injunction benefitting all its
members at once."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct.
2541, 2558 (2011).  Rule 23(b)(2) does not, however, "authorize

class certification when each individual class member would be
entitled to a <u>different</u> injunction or declaratory judgment . . .
[or] when each class member would be entitled to an
individualized award of monetary damages."[10]  <u>Id.</u> at 2557
(emphasis in original).

In this case, the proposed Settlement Agreement provides
indivisible injunctive relief that benefits all class members at
once.  <u>See id.</u> at 2558.  Specifically, Colgate agrees (1) to use
triclosan in Softsoap Antibacterial only in a manner consistent
with final FDA regulation, and (2) to stop or limit their use of
several of the allegedly misleading marketing statements.  Doc.
No. 92-2 ¶30.  The Settlement Agreement thus enjoins Colgate in
a way that applies to, and benefits, all class members in the
same manner – by preventing Colgate from using the allegedly
misleading marketing practices or reintroducing a triclosan-
based Softsoap Antibacterial in a manner inconsistent with final
FDA regulations.  As such, class certification under Rule
23(b)(2) is appropriate here.  <u>See</u> Garcia-Rubiera v. Calderon,

---

[10] The Supreme Court in <u>Wal-Mart Stores, Inc. v. Dukes</u> doubted
whether Rule 23(b)(2) is ever available to a class seeking
monetary damages.  <u>See</u> 131 S. Ct. at 2558 ("individualized
monetary claims belong in Rule 23(b)(3)").  The Court's holding,
however, was narrower – "We now hold that [claims for monetary
relief may not be certified under Rule 23(b)(2)] <u>at least where
(as here) the monetary relief is not incidental to the
injunctive or declaratory relief</u>."  <u>Id.</u> (emphasis added).

570 F.3d 443, 461 (1st Cir. 2009) (explaining that "class
actions asserting injunctive relief . . . fit under Rule
23(b)(2)").

Objector St. John asserts, however, that Rule 23(b)(2)
certification is not available in this case because, in light of
the class definition and the injuries alleged, monetary claims
"predominate." Id. at 6-14. She argues, therefore, that the
proposed class can be certified (if at all) only under Rule
23(b)(3). I disagree for two reasons.

First, although she argues at length that monetary claims
"predominate" here, St. John's argument ignores the Supreme
Court's teaching that "[w]hen a class seeks an indivisible
injunction benefitting all its members at once, there is no
reason to undertake a case-specific inquiry into whether class
issues predominate . . . . Predominance . . . [is] self-
evident." Dukes, 131 S. Ct. at 2558. In this case, the
Settlement Agreement provides only injunctive relief to unnamed
class members. In exchange, unnamed class members release only
injunctive, declaratory, and non-monetary equitable claims
related to Colgate's alleged misconduct. Doc. Nos. 92-2 ¶31; 94
at 1. The Settlement Agreement thus preserves unnamed class
members' right to bring a future individual or class action suit
for damages against Colgate based on this same alleged

misconduct.  Put another way, except for the five named

plaintiffs, monetary claims are irrelevant to this settlement.

Because the Settlement Agreement provides, and releases, only

class-wide injunctive relief, it is unnecessary to engage in

this "predominance" inquiry.  See Dukes, 131 S. Ct. at 2558.

        Second, because the Settlement Agreement provides, and

releases, only claims for injunctive relief, this case is

distinguishable from the cases upon which St. John relies.   In

her written objection, St. John cites a number of cases in which

courts denied Rule 23(b)(2) certification where plaintiffs

sought both monetary and injunctive relief and certification was

sought prior to a settlement having been received.  Doc. No. 100

at 16; see, e.g., In re Nexium Antitrust Litig., 297 F.R.D. 168,

173-74 (D. Mass. 2013) (denying Rule 23(b)(2) certification

where injunctive relief claim was "merely incidental to seeking

monetary damages"); Kottaras v. Whole Foods Mkt., Inc., 281

F.R.D. 16, 27 (D.D.C. 2012) (denying Rule 23(b)(2) certification

where plaintiff's claim for "money damages [is] at the heart of

this case" and plaintiff failed to specify the form of

injunctive relief it was seeking). She similarly cites cases

involving settlements in which unnamed class members were

required to release their monetary claims.  See, e.g., In re Dry

Max Pampers Litig., 724 F.3d 713, 716 (6th Cir. 2013) (deriding

a settlement in which unnamed plaintiffs were forced to release their "equitable" claims, and were barred from pursuing a future class action suit, against defendant); Richardson, 991 F. Supp. 2d at 197-202 (holding that requiring class members to give up their right to "maintain a Rule 23(b)(3) class action or any other type of class action seeking damages" was improper) (emphasis added).

Despite St. John's argument otherwise, the cases she cites are essentially different from what is happening here.  If the proposed settlement required class members to release any claims for damages, I agree that this would be a different case.  See Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 222-23 (2d Cir. 2012) (explaining the 23(b)(2) analysis for monetary claims post-Dukes).  Under the facts of this case, however, I reject St. John's argument, and grant the parties' motion to certify the class pursuant to Rule 23(b)(2).  See Garcia-Rubiera, 570 F.3d at 461 (holding that district court erred in denying class certification where plaintiffs sought only injunctive relief).

**B.    Final Settlement Approval**

    1.    Notice of Settlement

I first conclude that class members received legally adequate notice of the proposed settlement.  Fed. R. Civ. P.

23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."  In this case, pursuant to the court-approved notice plan, the court-appointed Notice Administrator took the following steps to notify potential class members of the proposed settlement: (1) sent a press release to approximately 6,000 press outlets across the United States, (2) published summary notice in the national edition of *USA Today*, (3) introduced an Internet banner ad campaign, and (4) posted a Class Settlement website.  Doc. No. 102-1 at 10-12.  Between June 17 and August 27, 2015 the Class Settlement website received 44,133 visits and 58,984 page views.  Doc. No. 102-3 at 5.  These actions satisfy the Rule 23(e)(1) requirement.

    2.    Rule 23(e)(2) Standard

    Pursuant to Fed. R. Civ. P. 23(e)(2), I may approve a class action settlement only if I conduct a fairness hearing and find that the terms of the settlement are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); In re Tyco Intern., Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 258-59 (D.N.H. 2007).  This analysis requires careful scrutiny of the proposed settlement in order to fulfill my role as "a fiduciary for the absent class members."  Bezdek v. Vibram U.S.A. Inc., 79 F. Supp. 3d 324, 343 (D. Mass. 2015).

25

Although I review the proposed settlement carefully, there is a "presumption in favor of the settlement if the parties negotiated it at arms-length, after conducting meaningful discovery." In re Tyco, 535 F. Supp. 2d at 259. Further, public policy often favors settlement in complex class action cases. Id.; see In re Pharm Indus. Average Wholesale Price Litig., 588 F.3d 24, 36 (1st Cir. 2009) ("Achieving settlement in such cases is not easy. District judges must realistically evaluate settlements based on the circumstances of the case.").

This Rule 23(e) analysis entails a wide-ranging review of the overall reasonableness of the settlement, and does not rely on any fixed checklist of considerations. In re Tyco, 535 F. Supp. 2d at 259; see Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Ass'n, 582 F.3d 30, 45 (1st Cir. 2009). Courts in this circuit, however, have often relied on the Second Circuit's Grinnell factors,[11] or some variation on those factors.

---

[11] The Grinnell factors include: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)(internal citations omitted), overruled on other grounds by Missouri v. Jenkins, 491 U.S. 274

See, e.g., Bezdek, 79 F. Supp. 3d at 343-44; In re Tyco, 535 F. Supp. 2d at 259; In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 206 (D. Me. 2003).  Although I have discretion to apply Grinnell verbatim, I employ a more concise list.  See In re Tyco, 535 F. Supp. 2d at 259.  As such, I address the following considerations in turn: (1) comparison of the proposed settlement with the likely result of continued litigation; (2) risk, complexity, expense and duration of the case; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.  Id. at 259-60.

     3.  Fairness Analysis

       **a.  Comparison of Proposed Settlement and Likely Result of Continued Litigation**

The proposed settlement provides a benefit equal to, or greater than, what class members would likely achieve through continued litigation.  Under the terms of the Settlement Agreement, Colgate agrees to use triclosan in Softsoap Antibacterial only in a manner consistent with final FDA regulation.  Doc. No. 92-2 ¶30.  Colgate further agrees, for a period of five years or until there is a change in applicable

---

(1989).

law, to circumscribe or stop using several of its allegedly
misleading marketing statements.  Id.  In particular, the
Settlement Agreement limits Colgate's use of the "99% efficacy"
language, and bars Colgate from using the phrase "Goodbye Germs
– Hello World" in labeling or marketing Softsoap Antibacterial.
Id.  These changes go to the heart of plaintiffs' allegation
that Colgate misled consumers by implying that Softsoap
Antibacterial containing triclosan provided greater health
benefits than washing with regular soap.  Doc. No. 102-1 at 27.
The proposed relief therefore provides a valuable benefit to
class members.

    The objectors nonetheless argue that the proposed
settlement is insufficient.  They principally argue that: (1)
the injunctive relief is "worthless" because Colgate has already
stopped using triclosan in Softsoap Antibacterial, (2) the
injunction does not go far enough to prevent Colgate's allegedly
misleading marketing practices, and (3) the Settlement Agreement
is inadequate because it does not provide monetary relief to
class members.  I address, and reject, each complaint in turn.

    First, several objectors argue that the proposed injunctive
relief is valueless because Colgate no longer uses triclosan in
Softsoap Antibacterial, and because the Settlement Agreement
only requires Colgate to use triclosan in a manner consistent

28

with final FDA regulations.  See Doc. Nos. 99 at 1-2; 96 at 1-2; 100 at 23.  These objections ignore the fact, however, that although the FDA has been investigating triclosan since the 1970s, the regulatory environment is no different today than it was when Colgate used triclosan in Softsoap Antibacterial.  Doc. No. 103 at 12-13.  Rather, the relevant FDA monograph remains "tentative," and therefore does not prevent hand soap manufacturers like Colgate from using triclosan in their products.  Id.  As such, this Settlement Agreement provides a binding, and otherwise absent, limit on Colgate's ability to reintroduce triclosan into Softsoap Antibacterial.  If one accepts plaintiffs' broader proposition, then, that triclosan should not be used in consumer products, the Settlement Agreement provides a meaningful benefit to the Class.[12]

Next, objectors complain that the Settlement Agreement does not go far enough to stop Colgate's allegedly misleading

---

[12] At the Fairness Hearing, St. John argued that Colgate should be enjoined from using triclosan in more products than just Softsoap Antibacterial.  See Doc. No. 105 at 20-21.  Even if I had the authority to grant a broader injunction, this case does not provide a scientific basis to determine whether triclosan is safe and effective in toothpaste, or hospital room uses, or other applications.  Id. at 47-48.  Moreover, as Colgate's counsel explained at the Fairness Hearing, "by its own allegation[s this case] is confined to the way [triclosan] was marketed with respect to this product, not a general attack on" triclosan.  Id. at 48.

practices.  Schwanekamp, for example, protests that that "the injunctive remedies go away in five years," that the "settlement does not prohibit the use of [the word] 'Antibacterial,'" and that the Agreement does not provide a mechanism to ensure that Colgate complies with the injunction.  Doc. No. 96, at 1-2. Cool likewise criticizes that "the injunctive [sic] sought under this settlement expires in five years."  Doc. No. 99 at 2.

Class members, in an ideal world, may have wished for a broader injunction.  Yet, after years of arms-length negotiations, plaintiffs have secured a significant benefit to the class.  The reality that plaintiffs did not achieve another "possible but perhaps unattainable variation[] on the proffered settlement" does not make this settlement inadequate.  See Nat'l Ass'n of Chain Drug Stores, 582 F.3d at 44.

Finally, several objectors oppose the Settlement Agreement because it provides no monetary relief to class members.  See Doc. Nos. 99 at 2 ("there are viable damage claims that class counsel has not pursued"); 96 at 1 ("The Class receives no monetary value for the settlement!").  These objections are unpersuasive for two reasons.

First, and most importantly, the Settlement Agreement preserves class members' right to bring a subsequent lawsuit seeking monetary relief based on these same facts.  As explained

30

above, under the terms of the Settlement Agreement (and the
parties' subsequent clarification), unnamed class members
release only non-monetary claims against Colgate.[13]  Doc. Nos.
92-2 ¶31; 94.  Thus, if an unnamed class member – including any
of the four objectors – wishes to seek money damages based on
Colgate's allegedly misleading marketing of Softsoap
Antibacterial, they remain free to do so.  This Settlement
Agreement will not stand in their way.

     Second, even if plaintiffs pursued claims for money damages
in this action, there is substantial uncertainty whether they
could actually recover such relief.  Should plaintiffs continue
to seek individualized money damages, they would likely have to
satisfy Rule 23(b)(3)'s additional requirements for class
certification.  Dukes, 131 S. Ct. at 2558 ("individualized
monetary claims belong in Rule 23(b)(3)").  As such, plaintiffs
would bear the burden of proving that the class is
"ascertainable," and that individual factual issues do not
"predominate" when calculating damages due to each class member.
Id.  As Colgate has argued, however, both of these requirements
may raise significant problems for plaintiffs.  See Doc. No. 104
at 2-5.  Thus, even if plaintiffs continued to litigate a money

---

[13] Only the five class representatives have agreed to release
their monetary claims.  Doc. No. 92-2 ¶32.

damage claim, substantial questions remain regarding whether they could actually recover that relief.

In summary, then, the Settlement Agreement secures the class's preferred benefit – an injunction limiting Colgate's allegedly misleading marketing strategies for Softsoap Antibacterial and use of triclosan – while preserving class members' right to pursue monetary relief based on that same alleged misconduct in the future.  In light of the uncertainties surrounding potential Rule 23(b)(3) certification – let alone the merits of plaintiffs' underlying claims - it is unlikely that the class could achieve a better outcome through continued litigation.  This factor, therefore, weighs in favor of approving the settlement.

**b.   Risk, Complexity, Expense, and Duration of the Case**

The parties here face the uncertainties inherent in any litigation.  Both parties maintain that their claims or defenses would prevail at trial.  Specifically, plaintiffs continue to allege that triclosan cannot provide the claimed health benefits, and that Colgate's marketing was therefore false or misleading.  Doc. No. 102-1 at 28.  Colgate, by contrast, maintains that Softsoap Antibacterial containing triclosan provided superior health efficacy, and so Colgate's marketing strategy was not false or misleading.  Id.  Colgate further

claims that Softsoap Antibacterial was priced at or below other
varieties of Softsoap, thus raising doubts about whether
plaintiffs could recover price premium damages if they were to
prevail at trial.  Id.  Absent settlement, the parties could
likely resolve these ongoing disputes only through additional
motion practice, discovery, and, potentially, trial.

The parties in this case face the added risks particular to
complex class action litigation.  Had this case not settled, the
parties would likely next brief and argue a class certification
motion.  As described above (and as plaintiffs appreciate, Doc.
No. 102-1 at 29), however, there is substantial uncertainty
whether that motion could succeed if plaintiffs continue to seek
individualized monetary damages.  Even apart from the merits,
then, plaintiffs face significant risks.

Finally, these risks would only grow if litigation
continued.  To date, plaintiffs have spent more than three
years, and invested more than 6,000 working hours, on this case.
Doc. No. 98-1 at 6.  At best, for plaintiffs, continued
litigation would entail additional expense, and delay any
recovery.  At worst, plaintiffs could lose the substantial
benefit that they have secured through this Settlement
Agreement.  Likewise, in light of the millions of units of
Softsoap Antibacterial that Colgate sold during the relevant

period, Colgate faces a possibly substantial verdict should it lose at trial.  Thus, for both sides, continuing to pursue this case guarantees only additional time, costs, and uncertainty. This factor, then, counts in favor of approving the settlement.

### c.  Reaction of the Class to the Settlement

There have been four objections to the proposed Settlement Agreement.  I address the substance of those four objections elsewhere in this order.  I note here, however, that this small number of objections itself counts in favor of approving the proposed settlement.  See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 96 (D. Mass. 2007) ("[T]his factor can be analyzed only by comparing the number of objectors and opt outs with the number of claimants, and by excessing the extent to which notice effectively reached absent class members.").  In this case, despite potentially millions of Settlement Class members, Doc. No. 102-1 at 31, and more than 44,000 visits to the Settlement Class website, there have been only four objections.  This indicates that the terms of the settlement are adequate.

### d.   Stage of the Litigation and Discovery Completed

This settlement follows three years of discovery and motion practice.  After completing initial discovery in early 2012, the parties fully briefed and argued Colgate's motion to dismiss. See Doc. Nos. 26; 31; 36; 43.  After I denied that motion, Doc. No. 46, the parties engaged in extensive factual discovery.  In particular, Colgate produced, and plaintiffs reviewed, more than 93,000 pages of documents.  Doc. No. 102-1 at 32.  Colgate deposed the five class representatives.  Plaintiffs deposed a number of Colgate employees, and have conferred with scientific, economic, and human factors experts.  Id.  In sum, the parties have completed sufficient discovery "to provide the parties with adequate information about their respective litigation positions." M3 Power Razor Sys. Mktg. & Sales Practice Litig., 270 F.R.D. 45, 63 (D. Mass. 2010); see In re Tyco, 535 F. Supp. 2d at 261 (concluding that the parties had "most of the crucial facts in their possession, making them well-positioned to understand the merits of their case").  As such, this factor weighs in favor of approval.

### e.   Quality and Conduct of Counsel

This settlement is the result of arms-length negotiation by skilled and diligent counsel on both sides. Here, counsel for both parties are veteran consumer class action litigation

attorneys, who, after participating in mediation, completing extensive discovery, investing thousands of work hours, and years of negotiations, are extremely knowledgeable about this case's facts and issues.  Doc. No. 102-1 at 18, 34.  This factor therefore weighs in favor of approving the settlement.

In summary, I find that each of the five modified Grinnell factors counts toward approving this agreement, and therefore conclude that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).

## C.   Attorneys' Fees and Expenses

Finally, I address plaintiffs' assented-to motion for fees and costs.  Doc. No. 98.  Plaintiffs seek an aggregate award of $2 million for fees and expenses incurred in prosecuting and resolving this suit.  Id.  Of that $2 million, class counsel ask the court to approve a $2,500 incentive payment to each of the five class representatives, $174,496 in Notice Administrator fees, and $1,813,004 for class counsel's attorneys' fees and other expenses.  Id.

Before class counsel may recover an award of fees and expenses, he must comply with Rule 23(h)'s notice requirements. Rule 23(h) provides, in relevant part:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel,

36

directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

Fed. R. Civ. P. 23(h).  In this case, class counsel filed their motion for fees and expenses on August 3, 2015, one day before the August 4 postmark deadline for class member objections.[14] Doc. No. 98-1.  For the reasons set out below, I conclude that class counsel has not yet provided "reasonable" notice, as required by Rule 23(h).

Undoubtedly, class members were on notice that plaintiffs would seek fees and expenses long before the August 4 objection deadline.  See Doc. No. 105 at 57.  Here, the Class Settlement website went live on June 17, 2015, approximately six weeks before the objection deadline.  Doc. No. 102-1 at 11.  The Settlement Agreement, as posted on that website, stated that plaintiffs were seeking $2 million in aggregate for fees and expenses, which would include $2,500 incentive awards payable to the class representatives.  Doc. No. 92-2 ¶36-37.  And, indeed,

---

[14] I preliminarily approved the settlement on June 5, 2015.  See Doc. No. 93.  In that order, I required that "[i]n advance of the Objection Date, Class Counsel shall file their motion for attorneys' fees, costs, and expenses.  Any motions for incentive awards to Class Representatives shall be filed by the same date."  Id. at 4.  The objection deadline was set for August 4, 2015.  See Doc. No. 102-5 at 1.  By filing their fee motion on August 3, class counsel thus technically complied with the order.

three of the four objections – each filed before the objection deadline – cited these figures in attacking the Settlement Agreement.  See Doc. Nos. 100 at 27 ("Given the $2,500 for each representative, nearly $2,000,000 for the attorneys, and $0 for absent class members, this settlement is unfair."); 99 at 3 ("Though the Class receives $0.00, Plaintiffs request $2,500 per named representative."); 96 at 2 ("[f]or this meager result, Class Counsel has requested fees of $2,000,000").

Nonetheless, Rule 23(h)'s "plain text . . . requires that any class member be allowed an opportunity to object to the fee motion itself, not merely to the preliminary notice that such a motion will be filed." In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988 993-94 (9th Cir. 2010) (emphasis added and punctuation omitted).  Moreover, class members who are forced to base their objection solely on the preliminary notice may be "handicapped by not knowing the rationale that would be offered [in counsel's motion] for the fee request." Redman v. RadioShack Corp., 768 F.3d 622, 638 (7th Cir. 2014).

In this case, then, class counsel did not comply with Rule 23(h) simply because class members were on notice in June that counsel would seek attorneys' fees. In re Mercury Interactive, 618 F.3d at 993-94.  Instead, class counsel here filed the fee motion itself only one day before the August 4 postmark deadline

for objections.  Doc. No. 98-1.  As such, class members had only

a day to review the billing rates, hours worked, and other

details provided for the first time in the motion, and then file

their objection (or at least request additional time).

Moreover, although Rule 23(h)(1) explicitly requires class

counsel to "direct" the fee motion to class members "in a

reasonable manner," Fed. R. Civ. P. 23(h)(1), I am not aware of

any evidence in the record that class counsel "directed" the fee

motion toward the class.[15]

     I therefore conclude that class counsel here did not

provide adequate notice of their fee motion to class members.

Although I would have considered any late-filed objections, and

in fact gave St. John an additional fourteen days after the

Fairness Hearing in which to object to class counsel's fee

request, that accommodation does not cure the deficiency in

notice to the class as a whole.  As such, I deny without

prejudice class counsel's motion for fees and expenses.  Within

14 days, class counsel shall file a motion proposing a method by

---

[15] Rather, at the Fairness Hearing, I asked "Is the fee request
on your website?  Is it up there now, the motion for fees?"
Counsel responded, "The fee request itself, no, but your order
is on the website."  I then stated that, "What I'm thinking is
you need to put the fee request up there."  Doc. No. 105 at 57.
The class website,
http://www.softsoapantibacterialclassactionsettlement.com/,
however, still does not contain the fee motion as of November
13, 2015.

which they can provide the class with adequate notice of their
motion for fees.

### III.  CONCLUSION

For the reasons set forth above, I grant the parties' joint
motion to certify the settlement class (Doc. No. 92). I grant
final approval of the proposed settlement on the terms set forth
in the Settlement Agreement (Doc. No. 102).

Subject to the terms and conditions of the Settlement
Agreement, the court enters an injunction against the defendant
requiring it to comply with the requirements of the Settlement
Agreement.  The court finds this injunction is necessary to
provide relief to the Settlement Class.  Accordingly, the court
orders the following injunction:

1.  For a period of five years from the effective date of
    this settlement, defendant shall not use a claim on
    Labeling and Marketing of the Product that is based on
    "99% efficacy" without an accompanying disclosure
    statement that generally describes the testing methods
    at a level consistent with those appearing on Labeling
    and Marketing of the Product as of the date of this
    Settlement Agreement.

2.  For a period of five years from the effective date of
    this settlement, defendant shall not use the statement
    "Goodbye Germs — Hello World" on Labeling and
    Marketing of the Product.

3.    In the event that defendant reintroduces the
      ingredient triclosan back into its liquid hand soap
      products, it will use triclosan only in a manner that
      is consistent with final FDA regulations relating to
      the use of that ingredient.

This consolidated action, which includes case numbers 12-

md-2320, 12-md-2321, 12-md-2323, 12-md-2324, 12-md-2325, and 12-

md-2326, is hereby dismissed (a) with prejudice as to (i) all of

named plaintiffs' monetary and injunctive relief claims and (ii)

the Settlement Class members' non-monetary injunctive relief

claims, and (b) without prejudice to any monetary injunctive

relief claims or damages claims by members of the Settlement

Class other than the named plaintiffs.

I deny without prejudice the assented-to motion for fees

and expenses (Doc. No. 98).

SO ORDERED.


                                   /s/Paul Barbadoro
                                   Paul Barbadoro
                                   United States District Judge


November 16, 2015

cc:  Counsel of Record


41